**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:

ALVIN ALEXANDER,                                                       CASE NO.: 06-30497-LMK

    Debtor.                                                               CHAPTER:  13
_____/

## OPINION ON CREDITOR'S OBJECTION TO CHAPTER 13 PLAN

THIS MATTER is before the Court on the Objection to Plan filed by Creditor Whitney National Bank ("Whitney") on February 9, 2007 (Doc. 39, incorporating Doc. 20 by reference). Whitney has raised multiple objections to the Debtor's Chapter 13 plan ("Plan"):  the Florida statute of limitations requiring foreclosure actions to be brought within five years of the date of acceleration will expire before the Debtor's Plan can be successfully completed, thus jeopardizing Whitney's security interest; the Plan fails to acknowledge the continuing existence of Whitney's lien, and the Debtor is incapable acknowledging the validity of the lien; the arrearage should be paid at the contract rate of interest; the period of time that the Plan provides for the curing of delinquent amounts is unreasonable; and, the note giving rise to the debt would be in default even if the Debtor could cure because title to the property has been transferred.  For the reasons explained more fully herein, all of Whitney's objections are overruled because the Plan meets the requirements for confirmation with respect to Whitney.  This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 151, 157(b)(2)(L), and 1334.

### *Background*

The relevant facts of this case are not in dispute.  On or about October 5, 2000, Delores L. Alexander, the Debtor's now-deceased wife, executed a promissory note in the principal amount of $59,800, payable to the order of Whitney (the "Note").  The Note was secured by a mortgage

on Mrs. Alexander's residence (the "House"), as evidenced by a mortgage dated October 5, 2000, executed by Delores Alexander and the Debtor (the "Mortgage"). The Debtor is not personally liable for the indebtedness due under the Note. Upon Mrs. Alexander's death, her heirs acquired fee ownership of the House; the Debtor retains only a life estate interest in the House, which is his principal residence. After Mrs. Alexander's death, the Note became delinquent and in default. Whitney then accelerated the indebtedness due under the Note and issued demand for payment on May 18, 2006. The Debtor filed his Chapter 13 petition on August 15, 2006. Whitney filed a proof of claim in the secured amount of $59,526.16 on October 24, 2006.

The Debtor has filed a Plan of reorganization, and since Whitney is the only creditor that filed an objection, the Court will analyze the Plan from Whitney's perspective only. With respect to Whitney, the Plan provides only that the Mortgage arrearage will be cured through the Plan. Regular monthly payments due under the Mortgage will be made directly to Whitney from the Debtor outside of the Plan. The question is whether the Court must confirm a plan that provides for curing the default on an accelerated mortgage when the Debtor is not personally liable on the mortgage and the mortgage is secured by property in which the Debtor has only a life estate interest.

### *Discussion*

Section 1325, which dictates when a Chapter 13 plan must be confirmed, provides, *inter alia*, that a plan shall be confirmed if it complies with applicable provisions of the Bankruptcy Code ("Code"), such as § 1322 (providing the elements of a confirmable Chapter 13 plan). 11 U.S.C. § 1325(a)(1). Section 1322 permits debtors to cure defaults and reinstate mortgages through their Chapter 13 plans. 11 U.S.C. §§ 1322(b)(5)[1] and 1322(c)(2) (2006); *DiPierro v. Taddeo (In*

---

[1] The plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured clam . . . ." 11 U.S.C. § 1325(b)(5).

2

*re Taddeo)*, 685 F.2d 24, 27 (2d. Cir. 1982) (determining that § 1322(b)(2) does not prevent a debtor from curing a mortgage default under § 1322(b)(5) because curing a default and maintaining payments is not a modification of the creditor's rights); *see also In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994). *In re Carpenter*, 331 B.R. 529 (Bankr. D. Conn. 2005) considered the amount necessary to cure a mortgage default for purposes of a Chapter 13 plan and determined that "[i]t is well established that curing a default through a Chapter 13 plan in accordance with § 1322(b)(5) 'de-accelerates' the underlying debt." *Carpenter*, 331 B.R. at 533 (citing *Taddeo*, 685 F.2d at 26-27, which concluded that, when Congress gave debtors the power to "cure defaults," it intended to allow the mortgagor to "de-accelerate" the mortgage and reinstate the original payment schedule); *see also In re Litton*, 330 F.3d 636, 640, 643-44 (4th Cir. 2003); *In re Hart*, 184 B.R. 849, 853, 856-57 (Bankr. M.D. Fla. 1995). Thus, a debtor may cure a mortgage default through a Chapter 13 plan in spite of the creditor's acceleration of the mortgage.

However, Whitney argues that allowing the Debtor to cure the default through his Chapter 13 Plan would jeopardize its security interest because of Florida's five-year statute of limitations on commencing mortgage foreclosure actions. Fla. Stat. § 95.11(2)(c). The length of the Plan in this case is five years, so the limitations period would expire before the Plan could be successfully completed, thus time-barring Whitney from foreclosing in the event of a default.

Since bankruptcy law permits the curing of a mortgage default through a Chapter 13 plan, thereby "de-accelerating" the mortgage, it should be deemed that the confirmation of a plan providing for the cure of a mortgage default stops the running of Fla. Stat. § 95.11(2)(c), thereby deactivating the statute of limitations. Enforcement of Florida's limitation on bringing foreclosure actions would usurp both the Debtor's ability to cure the mortgage default through the Chapter 13 Plan and the Creditor's ability to rely on certain remedies, and to that extent, the statute of limitations is preempted by federal bankruptcy law. If the statute of limitations did apply, the circumstances of this case fall within the doctrine of "equitable tolling," and the limitations

period would be equitably tolled. *See Young v. United States*, 535 U.S. 43, 49-52 (2002). This conclusion is buttressed by 11 U.S.C. § 108(c), which provides that any period that nonbankruptcy law fixes for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor or an individual protected by 11 U.S.C. § 1201 or 1301 does not expire until the end of such period or 30 days after the notice of the termination of the stay with respect to such claim, whichever is later. Section 108(c) indicates Congress's intent that state statutes of limitations be tolled for creditors while the bankruptcy case is pending. For these reasons, the Plan preserves Whitney's ability to foreclose and correspondingly protects its security interest.

Nonetheless, Whitney asserts that the Plan fails to acknowledge the continued existence of the mortgage and lien and that the Debtor is unable to acknowledge the lien since he is not personally obligated on the Note and has only a life estate interest in the House. This argument does not accurately comprehend the nature of a "claim" in bankruptcy or the contours of *in personam* as opposed to *in rem* rights. Whitney holds a claim which may be included in the Debtor's Chapter 13 Plan. The term "claim" should be construed as broadly as possible. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). The Code defines a "claim" in terms of a "right to payment" or a "right to an equitable remedy." 11 U.S.C. § 101(5) (2006). Hence, the Code defines a claim in terms of a creditor's rights rather than a debtor's obligations. In *Johnson*, a Chapter 13 debtor sought to include a mortgage lien in a Chapter 13 plan after the debtor's personal obligation on the debt had been discharged in Chapter 7. *Johnson,* 501 U.S. at 80-81. The Supreme Court concluded that the mortgage lien remained a claim that could be included in the plan despite the fact that the debtor was no longer personally obligated on the debt. *Id.* at 84-88. Stated more generally, a Chapter 13 plan may provide for curing a default on a claim that is secured by property in which the debtor has an interest even if the debtor is not liable on the debt *in personam*; the creditor retains its *in rem* rights, however, and is protected by appropriate reme-

4

dies. Thus, the Debtor in this case may cure the mortgage arrearage through the Chapter 13 Plan even though he is not personally obligated on the Note. Though Whitney has no *in personam* rights against the Debtor, Whitney does retain its *in rem* rights against the House. Moreover, the Plan provides only for the curing of the default, while the regular mortgage payments are made outside of the Plan; accordingly, Whitney will retain its Mortgage and corresponding lien on the House until the debt is repaid. *See* 11 U.S.C. § 1325(a)(5)

Whitney also insists that the arrearage should be paid at a 7.625% rate of interest. Section 1322(e) requires the amount necessary to cure a default to be determined in accordance with the underlying agreement and applicable nonbankruptcy law. Though the Note provides that principal accrues interest at 7.625%, nothing in the Note provides that the arrearage should accrue any interest whatsoever. Since the Note does not provide for any interest on the arrearage, § 1322(e) does not require the Plan to so provide.

Additionally, Whitney argues that the period of time provided for the cure in the Plan is unreasonable under § 1322(b)(5). However, it is certainly not unreasonable for a debtor to cure the default over the time the Code provides for the completion of the plan. *See Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993) (stating, "§ 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages **over the life of the plan** . . ."). There is nothing in the record to suggest that five years is unreasonably long to cure the default. In this case, curing the default over the fiver-year life of the Plan is reasonable.

Whitney further contends that, even if the arrearages were cured, the Note would still be in default because the Note contains a provision which states that Whitney may require immediate payment of all sums due if the House is transferred without prior written consent. Since the House passed to Mrs. Alexander's children upon her death, Whitney claims that the default is not curable. However, under the Garn-St. Germain National Depository Institutions Act of 1982, 12 U.S.C. §§ 1701j-3, a lender may not exercise its option pursuant to such a "due-on-sale" clause

5

when the transfer is to a relative resulting from the death of the borrower or when the spouse or children of the borrower become an owner of the property. 12 U.S.C. §§ 1701j-3(d)(5) and (6). Pursuant to Garn-St. Germain, Whitney cannot exercise its option to accelerate the mortgage and note based solely on the fee-interest transfer to Mrs. Alexander's children after her death, and the Note, therefore, is not in default on that basis.

Finally, Whitney's written objection raises issues as to the feasibility of the Plan. However, Whitney declined to question the Debtor in open court despite the opportunity do so at the hearing held on March 29, 2007. Based on the unchallenged proffer regarding the Debtor's ability to make the payments called for under the Plan, I find that the Plan is feasible under 11 U.S.C. § 1325(a)(6).

Accordingly, Whitney's objection to the Plan is overruled, and the Plan will be confirmed.

DONE and ORDERED in Tallahassee, Florida this 25th day of April, 2007.

LEWIS M. KILLIAN, JR.
Chief United States Bankruptcy Judge

cc: All parties in interest